Council, you've got sort of a formula here for sharing time. You're going to take 10 minutes and your co-council will take five minutes. Is that right? No, Your Honor. I will be taking six minutes. Yes, my colleague will be taking six minutes, and I aim to reserve three minutes for rebuttal. Okay. Keep your eye on the clock, please. Yes. Good morning, and may it please the Court. My name is Daniel Caballero. I, along with my colleague, Dania Hajaji, and with the UC Law Appellate Project, am here on behalf of Mr. Sorto-Lopez. As I said, I will watch the clock and aim to reserve three minutes for rebuttal. That's fine. Here, the agency erred as a matter of law by not following its own precedent with regard to two separate and independent issues. The government agrees with Mr. Sorto-Lopez that a finding of error on either of these issues requires remand. I will address the first issue, whether the BIA contravened its own precedent when considering two encounters Mr. Sorto-Lopez had with law enforcement. My colleague will address the second issue regarding the consideration of his sealed juvenile offense. Can I interrupt before you get going? I have questions about exhaustion. Which one of you wants to cover that? So we will be independently covering exhaustion for each of our issues. So I will cover exhaustion for the arrest issue. My colleague will cover exhaustion for the sealed juvenile offense. Got it. Thank you. Here, in Rey Arguen de Rodriguez, the BIA's precedent that bars giving more than little weight to arrests in the absence of corroborations of the allegations within an arrest or apprehension report was contravened by the BIA. The BIA stated that Mr. Sorto-Lopez's two encounters with law enforcement were, quote, significant adverse factors, as seen on page three of the record. It stated that these repeated arrests, even as an adult, which continued after his commitment to juvenile home, were a significant adverse factor. And that language, significant adverse factor, is more than the little weight that is allowed under Arguen. Because here, the two arrests in question were not corroborated and they did not lead to convictions. Weren't they corroborated by the petitioner's testimony? No, Your Honor. Here, like in Arguen, where the petitioner stated that, yes, while there were, the petitioner conceded in Arguen that the arrest occurred, there, the BIA found that that was not sufficient corroboration. Similarly, here, Mr. Sorto-Lopez did state that he was arrested on those two occasions. However, that's not sufficient corroboration here because under Arguen, what's required is something that confirms or strongly supports that the offense actually occurred or that there was- When he said that he confirmed that he was arrested, he talked about what happened and why the arrests occurred. And that's a little bit more than just talking about the procedural fact of an arrest. So I think that distinguishes from the case that you're arguing. How does it not? It's not distinguishable, Your Honor, because in Arguen, there, the applicant was arrested for suspicion of smuggling non-citizens and was later convicted and, however, the applicant was found to admit to no wrongdoing and stated that she was simply giving a ride to a family. Similarly, here, as you stated, Your Honor, Mr. Sorto-Lopez did concede that he was detained on those days. However, it was not sufficient corroboration because where this court has found that there was sufficient corroboration, it's required more. But under the precedent you were referring to, there was a question that, in other words, the charge conduct was disputed. And I think to Judge Forrest's point, on this occasion, the transcript shows that he was asked and he explains the interaction, I guess you'd say it's a confrontation with his cousin and the kids and there's no car seat. And he explained the conduct and I think tried to put it in context, but he did not deny the conduct. Well, Your Honor, he gave mitigating testimony similar to Arguen. For instance, Arguen denied guilt. I'm not smuggling these people. I'm doing, and I think that was a completely innocent explanation that was offered. That's what I'm trying to get at, counsel. Yes, and our position here is that, similarly, Mr. Soto-Lopez was confirming that he was not guilty by explaining that on those incidents, for instance, the Tennessee incident on January 2015, he stated that first his brother pushed him and an officer witnessed. That's on page 96 of the record. And under the Tennessee code under which he was arrested, that code requires causing bodily injury. But nowhere in Mr. Soto-Lopez's testimony did he confirm or strongly support that he actually did cause bodily injury to his brother. Similarly, under the California statute, it's a battery statute and it requires a noisy, heated, angry dispute. And here, Mr. Soto-Lopez stated that it was actually his wife's cousin that was getting violent towards him. So in neither of those instances did Mr. Soto-Lopez confirm that under the underlying statutes that he actually did engage in unlawful conduct. And to Judge Forrest's point regarding exhaustion, you asked about exhaustion here. The BIA independently, upon its own independent review, gave these two incidents more than little weight. More than little weight. And that was the first instance in which the agency assigned that weight to these two incidents. On page 3 of the record, the BIA stated that these repeated arrests, even after his commitment to juvenile hall, present a significant adverse factor. And the immigration judge had not made any such determination in its oral decision or decision as to the weight given to these arrests. So because it was an issue that was introduced by the BIA, an appeal directly to this court is proper. So you're saying the first time that your client had an opportunity to raise this was in his blue brief? Yes, Your Honor. If there are no more questions, I'll yield my time to my colleague. Okay. Thank you. Your Honors, the agency cannot condition relief based on factors that disregard state statutes and binding precedent. As a separate basis for remand, the agency erred as a matter of law with regards to its treatment of Mr. Soto Lopez's sealed juvenile record, which is deemed legally inexistent. First, the agency should not have considered Mr. Soto Lopez's sealed juvenile record. The government first introduced the facts of the sealed juvenile record in a form I-213. That form initiates immigration proceedings, and it is also presumed reliable in the absence of evidence to the contrary presented by the petitioner. The government's disclosure violated California Welfare and Institutions Code Section 781, which deems the proceedings underlying sealed records never to have occurred and requires the destruction of those records. Could I ask you, I spent some time trying to figure out, it's a little muddy in the transcript, how the government got the records, and to just confirm that it was the government who first introduced them. Yes, it is, Your Honor. The government first introduced them. Could you give me the ER site for that, please? The site for the document in which the government introduced them, that is at page 275 of the   And do you know where they got them? No. That is not reflected in the record. All right. So, in that, when the government disclosed the facts underlying Mr. Sertolope's sealed juvenile record and introduced the nature of the underlying offense, and also erroneously inflated the penalty, those two in combination made the offense look far more serious than it actually was. But the IJ didn't seem to be confused about that. The IJ seemed to recognize that it had been a 90-day detention, not eight years. Yes, but the IJ, nevertheless, considered the underlying facts of the sealed record and its discretionary denial of relief to Mr. Sertolope. And is it your contention that your client's representative didn't concede that those records could be used for the discretionary determination? So, it is our position that Mr. Sertolope didn't waive the sealed juvenile records argument because he was sort of placed in the unenviable position of being left with two options, which was either avoid disclosing the details of the sealed juvenile record and risk an IJ determination that only relies on the government's mistaken version of events in a document that is otherwise presumed reliable, or disregard the sealing statute and provide testimony that clarifies the events surrounding the offense and corrects the government's mischaracterization with regards to the penalty. Our client chose the latter. He testified and unsuccessfully attempted to mitigate the prejudicial impact of the government's disclosure. So he really faced a fundamentally unfair set of alternatives here. Counsel, I'm not sure I follow that because why couldn't Petitioner have done both? Why couldn't he have said, I don't think that this evidence is properly before the court and shouldn't be considered at all, to the extent you're going to consider it, I have a comment to make about it. Why couldn't he have done that? I can't speak to what counsel was thinking in the proceedings below. However, I do take your Honor's concern. And what I can say is that this court can, if this court deems the issue waived, it can consider a waived issue when it's purely an issue of law and the other side has not suffered any prejudice. Well, the problem here is it's not so much waiver as exhaustion. So a basic rule in these cases is that petitioners have to exhaust their arguments to the agency. Basically give the agency a chance to consider the problem and give an answer to it. And then we can get into whether the agency made a mistake or not. So I'm looking at this record and I'm trying to figure out how is it that the petitioner gave the agency a chance to understand what his concern was on whether these records were properly considered. Where in the record shows me that the agency had a reason to think that it needed to talk about that or think about it? So the extent of our exhaustion argument is with regards to the BIA's consideration of Mr. Soto-Lopez, the facts underlying Mr. Soto-Lopez's sealed record. According to this court's precedent in Socop Gonzalez v. INS, which was an en banc decision, the policy that underlies exhaustion is ensuring that the agency has the opportunity to resolve a controversy or correct its own errors before judicial intervention. And to do so, the BIA needs to have all the relevant facts before it. The BIA here had the opportunity to consider the issue because in its decision, it examined the propriety of considering the juvenile offense and determining discretionary relief. And in the same paragraph, it did note that Mr. Soto-Lopez's record is sealed and it's related to the sealing order that Mr. Soto-Lopez provided to the IJ. And the BIA, of course, had all the relevant facts before it to consider the issue. It independently reviewed the record, which showed that Mr. Soto-Lopez's juvenile record was sealed. So I give you that the agency knew of the facts in terms of sort of what it was being asked to look at and the nature of those things and that it was sealed, understood that. The link that I'm missing is what's the law that tells the agency this is out? You don't get to consider this when you're making a discretionary decision. Because if that doesn't exist, then we still need, we're still missing a link there somewhere. Your Honor, I am mindful of preserving the reminder of our time for rebuttal, but my response to that is that the law here is contained in the sealing order that Mr. Soto-Lopez provided to the IJ on the morning of his merits hearing. And in that sealing order, Section 781 is stated that the destruction of his record is also a checkbox on there. So you're relying on a point of California law as opposed to a point of federal immigration law? We are relying on a point of California law, but also on federal immigration law with regards to Socop Gonzales versus INS, with regards to the agency having the full opportunity to resolve an issue. I think that's right. He did go, his lawyer did introduce the superior court order that says this is sealed. But then I looked at the transcript. So I'm sure you know this, you seem very well prepared. I'm looking at the transcript at pages, what's on appeal, it's 8384. The transcript is actually, I think, 2829 as entered in the transcript. And the IJ says, I have a subsequent filing from DHS received August 10th. It's the rap sheet and the objection to the admission, submission of this document from the respondent. No, Your Honor. And then he went on, I did receive a filing, well, I received it this morning from respondent. It's basically his criminal history and the rap sheet and the documents from Texas and the sealed juvenile records. Did you receive these?  Any objection to their admission? And counsel says, no, Your Honor. So the BIA would have had this transcript, counsel, as well as that order. Yes. Indicating that these are sealed and that everybody's really clear. These are sealed juvenile records and yet there's an on record, I think, waiver. There's no objection. So why would the BIA think that this is a live issue? The BIA, just because the BIA had the opportunity to consider that issue because it acknowledged the sealing of Mr. Sergio Lopez's record and also cites to the sealing order. Okay. So you're relying on the Superior Court order that he went to the trouble to obtain and to introduce that that was a, that was a sealed record. Is that correct? That and Soko Gonzalez, which makes that pronouncement as to the policy that underlies the exhaustion requirement. Okay. We've taken you way into the time that you wanted to say, do we have any additional questions at this point? No. Okay. When you come back for planning purposes, we'll put two minutes on the clock for rebuttal. Thank you, Your Honor. You bet. Good morning, Your Honors. May it please the Court. Timothy Snyder on behalf of the Acting Attorney General. The petitioner's overarching case rests on a fundamental misapprehension of what actually happened in the record below. So before I jump into the two claims, I thought I would begin by making clear the order of events that happened at the September 2020 hearing, because I think that's really essential to resolving both of the cases here. And so as the Court questioned my friends on the other side, the hearing begins, and you find this on the transcript at pages 82 to 84, by both parties offering their various exhibits into evidence. So can I stop you right there? Yes, Your Honor. I just want to figure it out. So is that something that happens, I was a Superior Court judge, I never did this kind of work. Were the exhibits lodged before the day of the hearing, or is that the first time anybody sees them, the exchange there? So Your Honor, I'm not entirely sure how that happened here. I recall from the transcripts, again, we're limited to the administrative record here, and maybe there had been some email submissions. It's not a trick question. You can't tell away? I don't know the answer to what happened in this case, Your Honor. Okay, so I've read the transcript several times, and it does look like both parties submitted these. Is that right? Correct, Your Honor. All right. So both parties submit it within the course of two pages on the transcript. The government lodges theirs, the 213, and the petitioner says no objection. But then, the petitioner lodges their own record, and this includes the arrest sheet that independently lists the juvenile offense. And then the immigration judge asks the government, is there any objection? And the government says, there's no objection. So why did the government have his juvenile records that are sealed, and under state law are supposed to not exist? I don't understand that. So in the petitioner's brief, they acknowledge that the record is silent on the question of how the government first knew of the offense. And we're limited to the record here. But I will point, Your Honor. You don't know how the government got the records either? That was my question. Do you know? I do not, Your Honor. But I will point the court to the I-213 itself. And if you look at the chronology of events on the I-213, you have a 2012 juvenile commitment, and then you have a month later, an encounter with ICE that arises from that juvenile commitment well before anything is sealed. And again, Your Honor, how exactly the 213 is constructed is outside the record. But my understanding is it's sort of a living document that offenses get lodged. So again, the record is silent as to how the I-213 became aware of the information, how it got listed, exactly how it got listed. But based on the chronology of events, there's nothing in the record to suggest any kind of bad faith on the part of the government. You have a juvenile offense, you have an encounter with DHS officials, then you have a continuing obligation for a year for the petitioner to be meeting with the immigration authorities. And the petitioner does that for one year and then fails to meet with the immigration officials. And again, this is all— Can I stop you, please? Yes, Your Honor. Because you're doing a really good job of paddling away from the question. So let's get back to the question, please. And so we don't know how the government had the records, but going—and it does look to me that both parties had these records with them on the day of the hearing, and I think marked them as exhibits, that's my verb, but I think that's right. Yes, Your Honor. So let's just look at the government's conduct. I'm not suggesting bad faith, I am trying to figure out what happened. The government was aware that these were sealed juvenile records on the day of the hearing, right? Yes, Your Honor. So why were you trying to introduce them? Why was the government—I appreciate this wasn't you, but why was the government trying to introduce them? So Your Honor, I'm not sure I understand the question about the government introducing sealed records. The government was introducing the I-213. It wasn't—does that—maybe I'm not following Your Honor's question. I'm not trying to— The government's representative was aware at the time that those juvenile records were sealed, yes? Yes, Your Honor. It was—the petitioner submitted the order. That's the point of their argument. So maybe we could—and setting aside what I've pointed out about the transcript and about who's introducing what, I'm just looking at what the government was doing and trying to figure out why the government thought these records were fair game. Could you give me your best take on that? So Your Honor, I am not aware of any prohibition on using or relying upon materials that are under seal in a proceeding. The petitioner can take steps to protect the privacy of that information.  He had the superior court order. He had done that. Was the government aware of the superior court order sealing the records? So the order was lodged before the immigration judge. So everyone's aware that there is an order sealing the records? That's a little bit different than being able to talk about the underlying offense. And that's what the I-213—  Well, that's what the—how is it different, Your Honor? No, I mean, it's different in the sense of if the record is sealed, the contents are  And you're saying, well, sealing doesn't really matter. You can always talk about the contents. Is that what you're saying? No, Your Honor. There's many ways in which you can independently acquire knowledge of underlying facts or circumstances. You can have a petitioner knowingly offer to discuss the circumstances of the juvenile offense. And I'll point, Your Honor, to the record's silent on what was in the petitioner's mind, but there is indication in the record that the petitioner's counsel thought it might reflect well on the petitioner that he had satisfied terms of probation related to his underlying juvenile offense. Right, but we weren't really looking at the motivation of the petitioner. I was trying to ask what the government was doing and why the government thought this was permissible. Do you want to take one more run at trying to answer that question? If not, maybe I've exhausted your answer, but that is what I'm trying to get at. Sure, Your Honor. I'll take one more stab. I assure you I'm not trying to evade the question. So you'll see a soliquy at record site 88 to 90. And so as part of the cancellation of removal requirements, one of the factors is whether you're statutorily precluded from doing so. So it appears that those pages of the record, there was an initial question of what offenses would statutorily preclude the petitioner from being able to obtain the relief that he sought. And the immigration judge ruled in favor of the petitioner on that point and said juvenile offenses are not the kinds of offenses that run up against the statutory bar, so we're not going to go there. And again, this is critical, because once the immigration judge rules we're not going to go there, it's the petitioner's counsel who affirmatively offers to have his client testify to the underlying events for purposes of discretion. And that's why I think it matters why the petitioner's counsel invited the immigration judge to consider the underlying offense. So I'm not talking about petitioner's counsel. Could you go to the top of 80, maybe the bottom of 88 and the top of 89? I think you're calling my attention to what I have highlighted here in my transcript. And I'm trying to figure out if this person who's speaking, Ms. Kusky, the judge, that's the government's representative, yes? Is that right? I believe so, Your Honor, yes. Okay, so this paragraph, you're very well prepared for this argument, and I appreciate that. So up here it seems that the government's lawyer is taking issue with the fact that he had made no attempt to get any record from the sealed juvenile file, that that was the government's position, that that was incumbent upon him. Do I misread this? So you did not misread it, Your Honor, and that's what I was trying to explain. So there are four sort of prongs to the analysis to obtain cancellation of removal. One of those prongs is that you cannot be statutorily barred, and it's the petitioner's burden to demonstrate that he or she is not statutorily barred. So the government made the argument like, hey, it looks like he hasn't met his burden of showing either of these offenses. They've noticed them in the documents they've submitted to the court. We have it in the I-213. He bears the burden of producing documents to show why this isn't one of the offenses, and that's when the immigration judge correctly says this isn't the kind of offense that would run afoul of the statutory bar. The end. And so then I would direct your court to what happens immediately after that paragraph. I should direct your court to that before you leave that paragraph. My question really was, is it the government's position that even though the records were sealed, juvenile records, that counsel for the petitioner would have had the obligation to get them? We're familiar with the four-part test. Is it the government's position now, or is it the government's position then? Because the government made the argument in the paragraph you noted, and the immigration judge ruled against them. And I'm trying to figure out whether you're defending the government's position, the position that was taken in the hearing. I am not arguing that the petitioner was required to produce his juvenile records, no, Your Honor. Thank you. But, you know, in the context of a hearing when the government says I'm faulting them for not trying to unseal the documents, and opposing counsels there, trying to read the immigration judge and deciding what consequence is this argument, it's a, I mean, you're leaping on the fact that they were discussed later when the government says it's their burden to unseal these things, and they're at fault, and therefore they lose. So Your Honor, that's why the order of events is essential to understanding sort of the equitable gloss of this case, because the fact of the juvenile offense was introduced by the petitioner at the beginning of the hearing. And my question was, hence my question, because the government came to the hearing prepared to introduce it, I think. And maybe you think I misread that record, but it seemed curious to me. We can't figure out how the government had the records. We've already been through that. You're not sure. If I could jump in, Your Honor. I'm not aware of the government possessing the juvenile records, to be clear. They were not introduced in the immigration hearing. The government has a record of an incident occurring, and again, the event wasn't sealed until 2018. Right. And at the time of this hearing, you're aware that they're sealed. You've already, we've covered that ground. Correct. I guess I would be happy to shed more light on the problem, but I just don't understand the problem. I don't understand why the government can't refer to and consider, the agency can't consider a sealed record that the other side has not objected to and is happy to discuss. I just don't see it. Well, let's talk a little bit about, I was trying to nail down exactly what is permissible for the agency to consider when it's at the step of exercising its discretion. And it seems to me that as the governing law at that moment in deciding whether as a matter of discretion to give relief or not, the things that the agency consider is quite broad. Yes, Your Honor. Is there any authority out there to say that in that context, not in the statutory eligibility context, but only in the discretionary context, is there authority out there to say that the agency cannot consider juvenile records? Not that I'm aware of, Your Honor. Is there any authority out there to say that the agency cannot consider sealed records? Not that I'm aware of, Your Honor. And I would point this Court actually to the BR case, which the petitioners highlight as intervening precedent on this issue. And footnote 10 expressly reserves the question of whether the underlying question of those materials was a, quote-unquote, egregious regulatory error. So I believe that case was decided just a few years ago. So at least as of that point, there was not sort of a decision on that issue. And In re Lima, or in the matter of Lima, again, is not controlling either. It applied under very different circumstances. So again, to bring it back to your question, I'm not aware of sort of a controlling authority on that. We read BR and we understand your point. And I think the sequence is exactly what we've been trying to focus on from the top of the hour, so to speak. There's another argument that opposing counsel has made that I'm not sure you've grappled with. And they make the argument that although the IJ recognized, as I pointed out in my question, that this is a 90-day detention, not an eight-year detention. I think what they're arguing is that when the government represents, and I'm not attributing fault or bad faith, but misrepresents the nature of the underlying offense or the, it's a whopping difference between a 90-day detention and an eight-year detention, that he would have felt compelled to respond. And so, Your Honor, I guess I would just point petitioner to matter of Lima, which is a textbook case of how to procedurally handle this kind of situation. So my first question is, did the government misrepresent the detention that he received, the length of the detention or the nature of the offense? I would not use the word misrepresent, Your Honor. But I do concede there's a difference between the two. There's an error. There's an error. Okay. That's a better way to say it. There's an error. Yes, Your Honor. Okay. So that's the problem, right? Once there is an error, and a qualitative error that makes it appear to be a much more serious offense, he's going to be compelled to respond, right? Even for purposes of discretion, that seems to me to put him between a rock and a hard place. So what do you do when confronted with an error? You identify it for the adjudicator. So the adjudicator can do what the adjudicator did in Matter of Lima and take the appropriate steps for the proceeding. What you don't do is tell the adjudicator that you can consider and rely on the offense, and then in your briefing to the BIA, fault the petitioner or fault the government, fault the immigration judge for not relying on the sealed record enough. And that's at Record Site 18. And again, we're looking at the BIA decision here. And this goes beyond exhaustion. And exhaustion is a mandatory claims processing rule. It's not optional. This is an invited error, where you have a petitioner who invites the immigration judge to do something, faults the immigration judge for not considering the circumstances enough, and then when the BIA relies upon or considers the juvenile record, comes before this Court and says it was an egregious regulatory error, Your Honors. Counsel, we're just trying to get you to respond to opposing counsel's arguments. And I think you have, and I appreciate your patience. It took a while, but I think we got there. Are there other questions from the panel? Do you want to wrap up? I just ask that this Court deny the petition. Thank you, Your Honors. Thank you. We'll put two minutes on the clock for rebuttal. A couple of points on rebuttal, Your Honor. We first wanted to clarify that with regards to notice to the agency, that the BIA also, as my friend on the other side mentioned, had the benefit of its decision in matter of Lima. But contrary to the government's position in Lima, the BIA rejected the use of a sealed juvenile record in immigration proceedings. And that's because the California law, the operative California statute in that case, treated the underlying events as if they never occurred. This is similar language to the operative statute here. And that same rationale, that same rationale to exclude the record, which is, it's legal in existence, also applies to Mr. Soto-Lopez's case. When did he first raise that argument? When did he first? When did Mr. Soto-Lopez first raise that argument? The argument with regards to the BIA's decision in Lima. The one that you just made. Yeah. That was before this Court. Thank you. And second, the government improperly places the blame on Mr. Soto-Lopez with regards to the introduction of the facts of the sealed juvenile record. But it wasn't Mr. Soto-Lopez that introduced the prejudicial aspects of the sealed juvenile record. The government did so. And it did so in the form I-213. Again, it's a document that is presumed reliable. And from there, Mr. Soto-Lopez submitted a sealing order and testified to neutralize the government's disclosure. So had Mr. Soto-Lopez not testified, the information in the form I-213 would be credited by the IJ. Unless there are any questions. It doesn't appear that there are. Thank you very much, Your Honors. Thank you for your participation in this matter on a pro bono basis. We appreciate your assistance very much. We'll go on to the next case on the argument calendar, please.
judges: THOMAS, CHRISTEN, FORREST